IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SIESTA VILLAGE MARKET, LLC,      §
d/b/a SIESTA MARKET, et al.,      §
                                  § Civil Action No. 3:06-CV-0585-D
                    Plaintiffs,   § (Consolidated with Civil Action
                                  §    No. 4:06-CV-232-D)
VS.                               §
                                  §
RICK PERRY, Governor of Texas,    §
et al.,                           §
                                  §
                    Defendants.   §

MEMORANDUM OPINION
AND ORDER

In these consolidated actions, plaintiffs challenge as unconstitutional under the Commerce Clause of the United States Constitution certain provisions of the Texas Alcoholic Beverage Code ("Code") that prohibit out-of-state wine retailers from selling, shipping, and delivering wine directly to consumers within the state of Texas but allow Texas wine retailers to do so. Intervenors——two Texas state-licensed wholesalers of alcoholic beverages and one Texas state-permitted retailer of alcoholic beverages——challenge an agreed injunction ("Agreed Injunction") entered into by certain plaintiffs and the Administrator of the Texas Alcoholic Beverage Commission ("TABC") that enjoins the TABC from enforcing provisions of the Code that impede or interfere with the sale and delivery, by a permitted carrier, of wine from an out-of-state retailer to an adult Texas consumer anywhere in Texas. Intervenors seek declaratory and injunctive relief, contending, *inter alia*, that the Agreed Injunction unlawfully violates the

constitutional three-tier system for regulating alcohol in Texas.[1] The defendants in one case move to dismiss intervenors' cross-claim, and the plaintiffs in the other move to dismiss intervenors' counterclaims and to strike an affirmative defense.   For the reasons that follow, the court grants in part and denies in part one motion to dismiss and denies the other motion to dismiss and strike.

I

These consolidated actions——*Siesta Village Market, LLC v. Perry*, No. 3:06-CV-0585-D ("*Siesta Village*"), and *Wine Country Gift Baskets.com v. Steen*, No. 4:06-CV-232-D ("*Wine Country*")——challenge the constitutionality of Tex. Alco. Bev. Code Ann. §§ 1.07.05, 1.07.07(f), 6.01, and 11.01(a) and (b) (Vernon 1995).   These provisions of the Code allow Texas wine retailers to sell, ship, and deliver wine directly to consumers within the state of Texas, but they prohibit out-of-state wine retailers from doing so.

In *Siesta Village* plaintiffs[2] sue defendants Governor Rick

_____

[1]Under Texas's system of alcohol regulation, tier-one alcoholic beverage producers and manufacturers sell their products to tier-two distributors or wholesalers licensed in Texas.   Tier-two wholesalers in turn sell the products to tier-three retailers licensed in Texas.   The retailers are allowed by law to sell the alcoholic beverages to legal consumers in the "wet" areas of the state.   At each tier, taxes are collected.

[2]The plaintiffs in *Siesta Village* are Siesta Village Market, LLC, d/b/a Siesta Market ("Siesta Market"), Ken Travis, Ken Gallinger, Maureen Gallinger, and Dr. Robert Brockie.   Plaintiffs include Siesta Market, which operates a wine retail store in Florida, and several Texas residents who would purchase wine

Perry, Attorney General Greg Abbott, and the three Commissioners of the TABC, in their official capacities. The *Siesta Village* plaintiffs seek a declaratory judgment that §§ 1.07.05, 1.07.07(f), 6.01, 11.01(a) and (b), 22.03, and 41.01 of the Code violate the Commerce Clause of the United States Constitution and are therefore unconstitutional to the extent they prohibit out-of-state wine retailers from selling, shipping, and delivering wine directly to Texas consumers and Texas restaurants. They sue for an injunction prohibiting defendants from enforcing the statutes and corollary regulations and requiring them to allow out-of-state wine retailers to sell, ship, and deliver directly to consumers within the state of Texas.

In *Wine Country*, which was filed originally in the Fort Worth Division of this court before being consolidated with *Siesta Village*, plaintiffs[3] sue defendant Alan Steen ("Steen") in his official capacity as the Administrator of the TABC. Before *Wine Country* was consolidated with *Siesta Village*, the plaintiffs in *Wine Country* entered into an agreed preliminary injunction ("Agreed Injunction") with Steen that preliminarily enjoined Steen and,

---

directly from Siesta Market and other out-of-state wine retailers if Texas law permitted them to do so.

[3]The plaintiffs in *Wine Country* are Wine Country Gift Baskets.com, K&L Wine Merchants, Beverages & More, Inc., David L. Tapp, Ronald L. Parrish, and Jeffrey R. Davis. They include California wine retailers and Texas residents who desire to purchase wine directly from out-of-state retailers.

through him, all officials, agents, and employees of the TABC from enforcing §§ 1.07.05(a), 1.07.07(f), 6.01, 11.01, and 54.12 of the Code "or any other provision of the Code that operates to impede or interfere with the sale and delivery, by a carrier permitted under [Code] Chapter 41, of wine from an out-of-state retailer to an adult Texas consumer anywhere in Texas."  Agreed Inj. 1.

Shortly after *Wine Country* was filed, two Texas state-licensed wholesalers of alcoholic beverages, Glazer's Wholesale Drug Company, Inc. ("Glazer's") and Republic Beverage Co. ("Republic"), and a Texas state-permitted retailer of alcoholic beverages, SAMCO, Inc. d/b/a Pinkie's Liquor Stores ("Samco"), moved to intervene as defendants in both suits.  The court granted the motions and granted Glazer's, Samco, and Republic leave to intervene permissively as defendants in the consolidated actions.

Having obtained leave to intervene, Glazer's and Republic jointly filed counterclaims for declaratory and injunctive relief against the plaintiffs in *Siesta Village* and *Wine Country* and a cross-claim against Steen.[4]  Samco filed a counterclaim seeking declaratory relief against the plaintiffs in *Siesta Village* and *Wine Country*.  In substantially similar allegations, intervenors allege that although plaintiffs seek injunctive relief so that they can sell wine directly to Texas consumers, the result will be to

---

[4]They did not bring a cross-claim against Governor Perry or Attorney General Abbott.

- 4 -

violate the constitutional three-tier system for regulating alcohol in Texas.  They posit that the Supreme Court of the United States has recognized that states have the constitutional right to require that liquor sold within their borders first pass through a three-tier system and that this includes the power to require that out-of-state producers import their products to be sold through a permitted or licensed in-state wholesaler.  Intervenors aver that plaintiffs include Florida- and California-based retailers who purchase the alcohol they seek to market and sell from sources other than those permitted under the Texas three-tier system. According to intervenors, if plaintiffs are successful in invalidating the statutes at issue, the Texas three-tier system——a type of system that the Supreme Court has approved——will essentially be destroyed.

Glazer's and Republic——but not Samco——also complain that the Agreed Injunction is contrary to Texas law that governs the importation, distribution, and sale of alcohol, and that the State of Texas has recently represented in pleadings that it had adopted a non-enforcement policy before this litigation was filed.  They maintain that the TABC lacked authority to contradict legislative requirements by entering into the Agreed Injunction, that this has made thousands of unlicensed retailers and other persons eligible to import wine into Texas for delivery to Texas households, and that the TABC policy is contrary to the directions of the Texas

Legislature and adverse to intervenors' interests.

All three intervenors request, in pertinent part, that the court deny the relief that the plaintiffs in *Siesta Village* and *Wine Country* seek in these lawsuits; vacate the Agreed Injunction; declare that several Code provisions are valid components of Texas's three-tier system and that alcohol must pass through a licensed, in-state Texas wholesaler before it can be sold on a retail basis to Texas consumers, and/or that the enforcement of the statutes as applied to out-of-state alcohol retailers is within the constitutional exercise of the authority of the State of Texas; or, alternatively, if the court determines that the Texas laws are unconstitutional, that it grant limited injunctive relief that eliminates only preferential and unconstitutional treatment for licensed retailers that Texas law expressly creates.

In two motions, the *Siesta Village* defendants move under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the cross-claim of Glazer's and Republic, and the *Wine Country* plaintiffs move to dismiss intervenors' counterclaims and strike their Tax Injunction Act affirmative defense under Rules 12(b)(6) and 12(f).

II

The court turns initially to the motion to dismiss filed by the *Siesta Village* defendants.   Defendants maintain that intervenors' cross-claim is jurisdictionally barred because Glazer's and Republic have failed to identify a valid

jurisdictional basis for the cross-claim; the cross-claim is barred by Eleventh Amendment immunity to the extent it is based on alleged violations of state law;[5] and Glazer's and Republic lack standing.

A

Defendants first argue that Glazer's and Republic have failed to identify a valid jurisdictional basis for count II, their cross-claim for declaratory and injunctive relief that the statutes at issue are constitutional.  They contend that intervenors cite only 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201-02, none of which provides this court with subject matter jurisdiction.

The court concludes that intervenors have pleaded the jurisdictional predicate for count II.  In their consolidated answer, affirmative defenses, cross-claim, and counterclaim ("answer"), Glazer's and Republic aver that the court has jurisdiction over their entire cross-claim and their counterclaims based on 28 U.S.C. §§ 1331 and 1343(a)(3).  Intervenors Answer ¶ 92.  When in count II intervenors cite the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, they do so as a procedural mechanism. That is, they cite it as the source of authority for the court to determine the rights of plaintiffs, defendants, and intervenors and

---

[5]Defendants also maintain that any cross-claim brought against Governor Perry or Attorney General Abbott is jurisdictionally barred under the Eleventh Amendment.  As noted, *see supra* at note 4, intervenors do not assert a cross-claim against Governor Perry or Attorney General Abbott.  Accordingly, the court need not address this argument.

to declare that various provisions of the Code are constitutionally valid provisions of the Texas three-tier system, that retailers who desire to sell alcohol to Texas consumers must purchase alcohol from licensed or properly permitted Texas in-state wholesalers, and that the enforcement of such requirements, even as to out-of-state retailers such as plaintiffs, is a constitutional, nondiscriminatory exercise of the authority of the State of Texas, with which all retailers must comply to sell alcohol to Texas consumers. *See* Intervenors Answer ¶ 113.

Intervenors' reference to 42 U.S.C. §§ 1983 and 1988 in the jurisdictional allegations is somewhat imprecise if asserted as a basis for establishing subject matter jurisdiction. Intervenors aver that their action "also arises under 42 U.S.C. §[ ] 1983" because it "also seeks declaratory and injunctive relief against a public official acting under color of state law." Intervenors Answer ¶ 92. But "[r]ather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates," and an "underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). By their invocation of § 1983, intervenors necessarily mean that they are asserting a claim that at least falls within this court's federal question

jurisdiction under 28 U.S.C. § 1331, not that § 1983 itself confers subject matter jurisdiction.  In any event, intervenors explicitly allege that the court's subject matter jurisdiction is found in 28 U.S.C. §§ 1331 and 1343(a)(3), both of which are sufficient sources.

Accordingly, the court concludes that Glazer's and Republic have adequately identified a valid jurisdictional basis for their cross-claim.

B

Defendants next maintain that intervenors' cross-claim for violations of state law is jurisdictionally barred by the Eleventh Amendment.

1

Defendants argue that, sued in his official capacity, Steen assumes the identity of the TABC,[6] that he is entitled to the immunity available to the TABC, and that the Eleventh Amendment bars any claim for relief, including prospective and equitable relief, against a state agency.  They contend that the narrow exception crafted by *Ex Parte Young*, 209 U.S. 123 (1908), for prospective relief is inapposite when the claim is that the state

---

[6]Although in their cross-claim intervenors sometimes refer to plural "Defendants," they appear to do so to describe the defendants in the consolidated cases, not to assert their cross-claim against a party other than Steen.  The court thus assumes that intervenors assert their cross-claim against Steen alone, and it addresses only whether he is entitled to Eleventh Amendment immunity.

official has violated state law.

Intervenors respond that they bring this claim under *Ex Parte Young* seeking a declaration based on the Equal Protection and Commerce Clauses and prospective injunctive relief. They also contend that defendants' reliance on *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), is misplaced, because *Pennhurst* is factually distinguishable. They maintain that *Pennhurst* involved only alleged violations of state law; unlike the present case, there were no alleged violations of the Equal Protection and Commerce Clauses. Intervenors reason that, under *American Bank and Trust Co. of Opelousas v. Dent*, 982 F.2d 917 (5th Cir. 1993), *Pennhurst* does not apply where state law is involved, but the application of state law allegedly denied the plaintiff equal protection under the Fourteenth Amendment.

Defendants reply that intervenors' response is somewhat beside the point, because defendants challenge only the components of the cross-claim that allege that they violated *state* law by concurring in the Agreed Injunction. They also posit that intervenors have disregarded the many allegations of the cross-claim that assert violations of Texas law. Accordingly, they argue that the court lacks jurisdiction to grant relief to intervenors for Steen's alleged violations of Texas law.

2

From intervenors' response, it appears that they eschew any intent to allege as part of their cross-claim that Steen can be held liable in his official capacity and enjoined for violating Texas law by agreeing to the Agreed Injunction. Assuming *arguendo* that they do, any such claim is barred by the Eleventh Amendment and dismissed without prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction. *See, e.g., Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996) ("[A]n unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974))); *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997) ("The Eleventh Amendment . . . bars suits in federal court by citizens of a state against their own state or a state agency or department." (citations and internal quotation marks omitted)).

C

Defendants contend that intervenors' cross-claim must be dismissed for lack of jurisdiction under Rule 12(b)(1) because they lack standing.

1

Defendants maintain that intervenors lack standing because they have failed to plead facts that show a sufficient injury and direct personal stake in the controversy. They posit that a

discriminatory classification is an essential element of an equal protection claim; that intervenors contend the Agreed Injunction created two classifications (unregulated out-of-state retailers are given an unfair competitive advantage over regulated Texas retailers, and wine is given an unfair and discriminatory preference over beer and spirits (hard liquor)); and that intervenors have no standing to assert an equal protection claim based on either classification. Defendants reason that the Agreed Injunction addresses barriers to the sale and delivery of wine by out-of-state retailers, and wholesalers such as Glazer's and Republic do not compete with such retailers. They contend that because intervenors have not pleaded any facts that suggest that they seek to ship wine directly to Texas consumers (and that they would cease to be wholesalers if they did), intervenors lack standing to complain of any competitive advantage conferred on non-Texas retailers by the Agreed Injunction. Defendants posit that the same reasoning applies to the alleged preference for wine, since intervenors do not seek to ship beer or whiskey directly to Texas consumers, nor have they alleged facts that show that any sales of beer or hard liquor, by or to wholesalers, have been lost due to the direct shipment of wine to Texas consumers from out of state. Defendants also argue that intervenors have not pleaded sufficient allegations of concrete harm and that this defeats standing for the remainder of the cross-claim.

Intervenors respond that they have standing as wholesalers and that they have alleged an actual or imminent personal injury to themselves. They first cite the Supreme Court's opinion in *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984), for the proposition that wholesalers have standing to litigate whether a discriminatory tax has an adverse competitive impact on their business. They maintain that they have alleged an injury-in-fact that is actual and imminent because they are subject to paying excise taxes and to reporting, labeling, and penal regulations that are not applied to out-of-state retailers who sell to Texas consumers. Intervenors rely on a district court opinion, *Action Wholesale Liquors v. Oklahoma Alcoholic Beverage Laws Enforcement Commission*, 436 F.Supp.2d 1197 (W.D. Okla. 2006), and two Supreme Court decisions, *Bacchus Imports* and *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), to argue that indirect personal injury is sufficient to confer standing. They reason that Steen's uneven enforcement increases the price of their products as compared to exempted beverages, placing them at a competitive disadvantage that is sufficient to confer standing.

Intervenors also argue that they have alleged more than a conjectural injury that is not imminent. They maintain that the threshold for pleading actual and imminent injury is relatively low, that the court looks only to their allegations to assess standing, and that they have pleaded that they are placed at a

competitive disadvantage in relation to out-of-state importers, who are free of regulatory burdens.  Intervenors posit that the State's uneven regulation clearly increases the price of their products versus those of the unregulated class, and that court decisions, including *Action Wholesale Liquors*, hold that this type of injury is both concrete and particularized.

In reply, defendants distinguish *Action Wholesale Liquors*, *Bacchus Imports*, and *General Motors*, arguing that, in each, the challenged classification was alleged to have favored a business with whom the plaintiff was then actually in competition.  They contend that intervenors are asserting that, because out-of-state retailers do not have to pay the same taxes and regulatory costs as do Texas wholesalers and retailers, they can sell wine to Texas consumers at a lower cost than Texas wholesalers charge to Texas retailers.  Defendants argue that it is important to note that plaintiffs are interstate retailers who seek to sell wine directly to Texas consumers, not to Texas retailers.  Thus out-of-state retailers are not competing with intervenors for the business of Texas retailers.  Defendants also contend that Texas law already allows interstate and domestic wine producers to bypass wholesalers and retailers and sell directly to Texas customers.  Finally, defendants reply that intervenors have not alleged facts that, even viewed liberally, establish a realistic danger of sustaining a direct injury that is certainly impending and is real and

- 14 -

immediate, not conjectural or hypothetical.

2

The requirement that a plaintiff have standing to sue involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To satisfy the requirements of Article III of the Constitution, plaintiffs must show, at an "irreducible constitutional minimum," that they have "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant[s], and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To satisfy the requirements of Article III, an injury in fact must be "concrete and. . . actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (citations omitted). Moreover, "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

"It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 607 (5th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n. 8 (1986)). "In other words, the burden is on the plaintiff to allege facts sufficient to support standing." *Id.*

(citing *Warth*, 422 U.S. at 501-02).

3

The court considers first whether Glazer's and Republic have alleged a sufficient injury to support standing to assert their claim that the Agreed Injunction gives an unfair competitive advantage to out-of-state wine retailers.

In *Bacchus Imports* liquor wholesalers challenged a Hawaii alcohol tax as discriminatory because it imposed a 20% tax on sales of liquor at wholesale, but exempted from this tax certain locally produced alcoholic beverages. *Bacchus Imports*, 468 U.S. at 265. Although the wholesalers were not among the class of out-of-state liquor producers allegedly burdened by Hawaii's law, the Court reasoned that they had suffered economic injury because the tax "increas[ed] the price of their products as compared to the exempted beverages." *Id.* at 267.

Similar to the wholesalers in *Bacchus*, intervenors allege in their cross-claim that, by allowing out-of-state retailers to sell wine directly to Texas consumers, the Agreed Injunction adversely affects their business. They aver that the Agreed Injunction "compromises [their] present and future business interests and their customer relationships with their supplier-wineries and licensed retailers." Intervenors Answer ¶ 108. They also allege that, by allowing out-of-state retailers to bypass the Texas three-tier system, "the unregulated class of out-of-state importers are

given . . . unfair competitive advantages by the Agreed Injunction." *Id.* at ¶ 109.  In-state wholesalers must still comply with Texas's three-tier system of taxation, accounting, permits, and background checks, all of which increase their costs of doing business.  Under the terms of the Agreed Injunction, out-of-state wine retailers may bypass the system completely and thus avoid these added costs of production.  *Id.*

Although intervenors are somewhat removed from the parties who directly compete with the out-of-state wine retailers, the economic injury that they allege they are suffering under the terms of the Agreed Injunction is no more attenuated than that of the wholesalers in *Bacchus Imports.*  According to intervenors' factual allegations, the Agreed Injunction effectively enables out-of-state wine retailers to sell their products to Texas consumers at a lower cost than that at which in-state retailers can sell the same products.  Under the Agreed Injunction, out-of-state retailers are now able to bypass the Texas three-tier system of taxation, licensing, and background checks.  In-state wholesalers and retailers, however, must still sell their products though Texas's three-tier system.  When in-state wholesalers' and retailers' products reach the consumer level, the products will be sold to Texas consumers at a higher price than the same products sold by out-of-state retailers.  Although Texas wholesalers do not compete directly with out-of-state retailers, the effect of the Agreed

Injunction is to decrease demand for wine sold through the Texas system as consumers choose the lower-priced wine sold by out-of-state retailers.  This allegedly injures both Texas retailers and the wholesalers from whom the retailers purchase their inventory. This alleged injury to intervenors is sufficient to establish standing.

Defendants' attempt to distinguish this case on the basis that plaintiffs are interstate retailers who seek to sell wine directly to Texas consumers, not to Texas retailers, lacks force.  What is determinative for standing purposes is that intervenors allege that they are placed at a competitive disadvantage because their sales are regulated and taxed more onerously than are those of out-of-state wine retailers.  Because the ultimate result is alleged to be that wine sold by out-of-state retailers will be less expensive for Texas consumers than will be wine sold through Texas's system, thereby giving a competitive advantage to out-of-state retailers, this is sufficient to create standing for in-state wholesalers, since their business will allegedly be harmed as a result of the Agreed Injunction.

Defendants' contention that Texas law already allows interstate and domestic wine producers to bypass wholesalers and retailers and sell directly to Texas customers is likewise unpersuasive.  A Texas consumer who wishes to purchase wine directly from a specific winery (either in-state or out-of-state)

need not go through the Texas three-tier system.  But for all wines *not* purchased directly from a winery, Texas consumers may choose to purchase their wine from an in-state retailer at a higher price or from an out-of-state retailer at a lower price.  It is in this instance——the purchase of wine from a retailer, rather than directly from the winery itself——that the alleged injury to both wholesalers and retailers arises.

D

Defendants next move under Rule 12(b)(6) to dismiss intervenors' claim that the Agreed Injunction violates the Equal Protection Clause.

1

Intervenors maintain that the Agreed Injunction violates their rights under the Fourteenth Amendment Equal Protection Clause because it prefers one form of interstate commerce over another. Defendants move to dismiss for failure to state a claim, contending that intervenors have not alleged the requisite discriminatory intent, that defendants' agreement to the Agreed Injunction is subject only to deferential scrutiny, and that the agreement is rationally related to valid governmental purposes.

"'[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'"  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting 5A Charles A. Wright & Arthur R. Miller,

- 19 -

*Federal Practice and Procedure* § 1357, at 598 (1969)).
"[D]ismissal of a claim on the basis of barebones pleadings is a
'precarious disposition with a high mortality rate.'" *Id.* (quoting
*Barber v. Motor Vessel "Blue Cat*," 372 F.2d 626, 627 (5th Cir.
1967)). "The court may dismiss a claim when it is clear that the
plaintiff can prove no set of facts in support of his claim that
would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322,
324 (5th Cir. 1999) (per curiam) (Rule 12(c) decision) (citing *Fee
v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)). "In analyzing the
complaint, [the court] will accept all well-pleaded facts as true,
viewing them in the light most favorable to the plaintiff." *Id.*
(citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th
Cir. 1996)). "The issue is not whether the plaintiff will
ultimately prevail, but whether he is entitled to offer evidence to
support his claim." *Id.* (citing *Doe*, 81 F.3d at 1401). "Thus, the
court should not dismiss the claim unless the plaintiff would not
be entitled to relief under any set of facts or any possible theory
that he could prove consistent with the allegations in the
complaint." *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368
(5th Cir. 1996)).

2

Defendants first argue that intervenors have not alleged the
requisite discriminatory intent. The Equal Protection Clause
commands that no state shall "deny to any person within its

- 20 -

jurisdiction the equal protection of the laws," which is essentially a direction that states treat alike all persons who are similarly situated. *See Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir. 2001). "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must co-exist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans,* 517 U.S. 620, 631 (1996). "Thus, a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292-293 (1987)). In many cases, however, it is difficult to prove purposeful discrimination. Thus "[b]ecause direct evidence of discriminatory purpose is rarely available, courts must make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Jim Sowell Constr. Co. v. City of Coppell, Tex.*, 61 F.Supp.2d 542, 546 (N.D. Tex. 1999) (Fitzwater, J.) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). "The court must therefore look at the totality of the relevant evidence to determine whether invidious discriminatory purpose was a motivating factor for the decision." *Id.* (citing *Washington v. Davis,* 426

U.S. 229, 242 (1976)).

Although the trier of fact will ultimately be able to consider circumstantial evidence in determining the existence of discriminatory intent, in ruling on defendants' motion to dismiss, the court must examine intervenors' cross-claim to decide whether intervenors have adequately alleged that Steen acted with such intent. In response to defendants' assertion that they have not pleaded the requisite discriminatory intent, intervenors argue that they have met the low notice-pleading burden of Rule 8(a)(2) by alleging that Steen's non-enforcement policy "prefer[s] one form of interstate commerce over another" and that such preference "violates Intervenors' rights under the Equal Protection Clause to the evenhanded and nondiscriminatory application and administration of state law." Intervenors Answer ¶ 111. Drawing all inferences from the cross-claim in favor or intervenors and viewing the pleading in a light most favorable to them, *see, e.g., Royal Bank of Canada v. FDIC*, 733 F.Supp. 1091, 1094 (N.D. Tex. 1990) (Fitzwater, J.), the court is unable to say that intervenors cannot establish purposeful discrimination.

3

Defendants contend next that Steen's decision to concur in the Agreed Injunction cannot be grounds for an equal protection claim because it is rationally related to legitimate governmental purposes. Intervenors respond that the decision should be reviewed

- 22 -

under scrutiny more searching than rational basis review because Steen allegedly discriminated on the basis of citizenship, which intervenors maintain is a suspect class.

Even if the court later agrees with defendants that this claim must be adjudicated under the rational basis test, in deciding whether to grant a Rule 12(b)(6) motion, the court considers only the pleadings and must construe all facts in favor of intervenors as the nonmovants.  Under the highly deferential standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and viewing the allegations of the cross-claim in the light most favorable to intervenors for purposes of deciding the motion to dismiss, *see, e.g., Royal Bank of Canada*, 733 F. Supp. at 1094, the court is unable to say that they can prove no set of facts, consistent with the allegations, that would entitle them to relief.  The court therefore denies the motion to dismiss their equal protection claim.

E

1

Finally, defendants maintain that in signing the Agreed Injunction, Steen made a discretionary regulatory enforcement decision that intervenors cannot challenge by way of their cross-claim.  They essentially argue that because Steen has broad discretion in carrying out his statutory functions, the decision not to take enforcement action against out-of-state wine retailers shipping wine directly to Texas consumers is immune from judicial

review.   Thus defendants maintain that intervenors' cross-claim against Steen must be dismissed under Rule 12(b)(6) for failure to state a claim.[7]

In support of their argument, defendants cite *Heckler v. Chaney*, 470 U.S. 821 (1985).   In *Heckler* the Court addressed a federal court's ability to review the discretionary decisions of a federal agency under the Administrative Procedures Act, 5 U.S.C. §§ 701-706.   *Heckler*, 470 U.S. at 828-835.   The Court explained:

> [A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion . . . [the] decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise . . . . The agency is far better equipped than courts to deal with the many variables involved in the proper ordering of its priorities.

*Id.* at 831-32.   But in those situations where "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," an agency decision not to enforce is not entitled to the same presumptive immunity from review.   *Id.* at 833.

Defendants argue that the Code vests the TABC with general charges to implement the statute, not detailed guidelines to follow

---

[7]Although it is unclear from defendants' motion and brief whether they seek to dismiss intervenors' cross-claim on this basis under Rule 12(b)(1) or (6), the court discerns no reason to conclude that they are challenging the court's subject matter jurisdiction.

in exercising enforcement power.  Thus they maintain that Steen's decision to sign the Agreed Injunction was within his discretionary enforcement powers, over which the court may not exercise judicial review.

Intervenors respond by arguing that Steen was not vested with the discretion to decide whether to enforce the provisions of the Code.  Rather, they argue that the Code requires Steen to enforce its provisions and that the TABC lacked authority to contradict legislative requirements by entering into the Agreed Injunction. Under the Code, "[t]he [TABC] . . . shall inspect, supervise, and regulate every phase of the business of manufacturing, importing, exporting, transporting, storing, selling, advertising, labeling, and distributing alcoholic beverages, and the possession of alcoholic beverages for the purpose of sale or otherwise."  Tex. Alco. Bev. Code Ann. § 5.31 (Vernon 1995).  It also provides that "[t]he [TABC] shall investigate violations of this code and of other laws relating to alcoholic beverages . . . ."  *Id.* at § 5.36. Intervenors argue that these Code provisions demonstrate the situation envisioned in *Heckler*, where "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," *Heckler*, 470 U.S. at 833, such that the decision not to prosecute is subject to judicial review.  They also maintain that, by signing the Agreed Injunction, Steen has abdicated his regulatory responsibility, and that immunity does not

apply where the agency has consciously and expressly adopted a general policy that effectively abdicates its statutory responsibilities.

2

Although the Code vests the TABC with power to "inspect, supervise, and regulate" nearly all aspects of the administration of Texas's alcoholic beverage regulatory scheme, *see* Tex. Alco. Bev. Code Ann. § 5.31 (Vernon 1995), it does not, as intervenors argue, provide the TABC with detailed guidelines for enforcing its provisions.  The Code does not confer on the TABC or Steen the type of specific statutory enforcement guidelines that *Heckler* describes, thereby warranting a departure from the general rule that discretionary agency enforcement decisions are immune from judicial review.  *See Heckler*, 470 U.S. at 833-34.  Nevertheless, for reasons the court will explain, the absence of detailed enforcement guidelines in the Code does not immunize the TABC from judicial review of actions that are allegedly unconstitutional.

Defendants rely on *Heckler* to argue that the lack of detailed guidelines in the Code for the TABC to follow in exercising its enforcement powers renders Steen's action in suspending enforcement of § 11.01 "discretionary" and therefore immune from judicial review.  Even assuming that *Heckler* applies to a case in which a federal court is asked to review the discretionary enforcement

decision of a *state* agency acting pursuant to *state* law,[8] the court cannot agree with defendants' attempt to apply *Heckler* to this case.

"In Texas, a person may obtain judicial review of an administrative action . . . [if] the action adversely affects a vested property right or otherwise violates a constitutional right." *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 172 (Tex. 2004) (citing *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000); *Firemen's & Policemen's Civil Serv. Comm'n v. Kennedy*, 514 S.W.2d 237, 239 (Tex. 1974); *City of Amarillo v. Hancock*, 239 S.W.2d 788, 790 (Tex. 1951)). Intervenors allege that the Agreed Injunction violates various provisions of the Constitution. Thus under Texas law, Steen's decision to agree to the injunction is

---

[8]*Heckler* is distinguishable because, in *Heckler*, the Court addressed whether, under the Administrative Procedures Act, a federal court had the power to review the discretionary enforcement decisions of a federal agency. Unlike *Heckler*, this court is being asked to review the decision of Steen, a state administrator acting under authority vested in him by state law. Defendants cite *State v. Malone Service Co.*, 829 S.W.2d 763 (Tex. 1992), in which the Texas Supreme Court noted that "[t]he complexity of regulatory enforcement requires that a state agency retain broad discretion in carrying out its statutory functions." *Id.* at 767 (citing *Heckler*, 470 U.S. at 831). But *Malone* was a discriminatory prosecution case. And although the court noted the deference owed to a state agency, it ultimately reviewed the actions of the agency to determine whether its decision to prosecute was, in fact, discriminatory. Defendants cite no other case that outlines the degree of deference or immunity a federal court owes to a state agency acting pursuant to the discretionary enforcement power vested in it by a state statute.

subject to judicial review.   While *Heckler* holds that when an agency is vested with discretion in making enforcement decisions, the decision not to enforce the scheme against certain parties is not reviewable, *see Heckler*, 470 U.S. at 831, defendants have not shown that this principle applies to *any* decision by an administrator acting under such a statutory scheme.   Rather, as noted above, when a constitutional violation is alleged, the actions of Texas agencies *are* subject to judicial review.[9]

Moreover, in their prayer for relief, intervenors do not ask the court to require Steen to enforce § 11.01 against specific retailers.   Rather, they only ask the court to vacate the Agreed Injunction and uphold the validity of Texas's three-tier system. If the court grants intervenors the relief they seek, Steen's discretionary decisions against which out-of-state retailers to enforce § 11.01 will be left completely undisturbed.

Accordingly, the court concludes that entering into the Agreed Injunction is an agency action subject to judicial review under

---

[9]The court need not now address any Eleventh Amendment implications of this reasoning——i.e., that this court can conduct judicial review because Texas law subjects Steen's allegedly unconstitutional decision to judicial review——because this question is not adequately addressed in the briefing.   The court does not suggest, however, that its power to conduct judicial review supersedes any immunity conferred by the Eleventh Amendment.   It merely holds at this preliminary procedural stage that defendants have failed to demonstrate that Steen's decision is immune from judicial review on the basis that it is a discretionary decision not to enforce the Code against out-of-state wine retailers shipping wine directly to Texas consumers.

Texas law. *See Tex. Dep't of Protective and Regulatory Servs.*, 145 S.W.3d at 172. The court therefore declines to dismiss intervenors' claim that the Agreed Injunction violates their constitutional rights.

### III

The court now considers the *Wine Country* plaintiffs' motion to dismiss intervenors' counterclaims and affirmative defense under Rules 12(b)(6) and 12(f).

### A

Plaintiffs move under Rule 12(b)(6) to dismiss all of intervenors' declaratory judgment counterclaims, contending that intervenors have failed to allege that plaintiffs are state actors or are acting under color of state law. They maintain that the counterclaims must be dismissed because intervenors have failed to allege any element of a justiciable dispute, as required by the Declaratory Judgment Act. They argue that intervenors have alleged neither an "injury in fact" nor "causation" stemming from plaintiff's actions, and that intervenors do not seek a remedy from the *Wine Country* plaintiffs that would provide redress for any alleged injury.

### B

As a threshold matter, the court must decide which counts of intervenors' counterclaims seek a declaratory judgment. Although plaintiffs appear to construe all of intervenors' counterclaims to

request relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, they do not explicitly request such relief in counts I and III.

In count I, intervenors allege that the Agreed Injunction violates the Twenty-First Amendment, the Commerce Clause, and the Equal Protection Clause, and they ask the court to vacate the Agreed Injunction. Intervenors do not request a declaration that the Agreed Injunction is unconstitutional. In count III, intervenors aver that any different treatment imposed by Texas law is constitutional and/or immunized from Commerce Clause scrutiny by the Twenty-First Amendment and/or the Webb-Kenyon Act, 27 U.S.C. § 122. They request that, if the court determines that any portion of the Code is unconstitutional, it limit the remedy to eliminating only those elements that constitute unconstitutional discrimination while expressly declaring the continuing validity of the other Code provisions that plaintiffs challenge. It is only in count II that intervenors expressly request a declaratory judgment that the challenged provisions of the Code are constitutionally valid and that out-of-state retailers must comply with Texas's three-tier system.

Accordingly, the court interprets plaintiffs' motion to address the request for declaratory relief that intervenors make in

count II.[10]

C

The court first considers plaintiffs' contention that intervenors' counterclaims must be dismissed on the ground that plaintiffs are not state actors. Claims under 42 U.S.C. § 1983 for constitutional violations generally require the presence of a state actor or private actor acting under color of state law. *See, e.g., Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005) ("To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."). But plaintiffs mischaracterize intervenors' counterclaims. Intervenors do not allege that *plaintiffs* have violated the Constitution, and they nowhere seek such a declaration.

Intervenors request in their counterclaims that the court declare that the Texas *three-tier system* is constitutional. They ask the court to "declare that [the challenged provisions of the Code] are constitutionally valid provisions of the Texas three-tier system." Intervenors Answer ¶ 113. Intervenors ask the court to declare that retailers who seek to sell alcohol to consumers located within the state of Texas must purchase the alcohol from

_____

[10]Although the court reaches this conclusion, to be consistent with the briefing, the court will refer to intervenors' plural counterclaims.

licensed, in-state wholesalers.  *Id.*  This is not an allegation that plaintiffs have violated the Constitution.  Accordingly, it is immaterial that intervenors fail to allege that plaintiffs are state actors.  Similarly, to the extent that intervenors request that the court limit its remedy to the elimination of those elements that constitute unconstitutional discrimination, intervenors do not allege that plaintiffs have violated the Constitution.  Accordingly, the fact that plaintiffs are not alleged to be state actors does not preclude intervenors from pursuing their counterclaims, and the court denies plaintiffs' motion to dismiss on this ground.

D

Plaintiffs next argue that intervenors' counterclaims fail to allege an actual controversy sufficient to maintain a declaratory judgment action.  The Declaratory Judgment Act, 28 U.S.C. § 2201, states: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  "For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'"  *Ashcroft v. Mattis,* 431 U.S. 171, 172 (1977) (quoting *Aetna Life Ins. Co. v. Haworth,* 300

U.S. 227, 242 (1937)).  "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.'" *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (citing *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).

"Th[e] [Fifth] circuit interprets the § 2201 'case of actual controversy' requirement to be coterminous with Article III's 'case or controversy' requirement."  *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) (citing *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997); *Texas v. West Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989)).

> Proof of a case or controversy requires a litigant to show that: (1) he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant [injury in fact]; (2) that the injury fairly can be traced to the challenged action [causation]; and (3) that the injury is likely to be redressed by a favorable decision [redressability].

*Lawson*, 111 F.3d at 404-05 (internal quotation marks omitted) (brackets in original).  Plaintiffs challenge intervenors' counterclaims for declaratory judgment as failing to allege all three of the required elements.

1

Plaintiffs maintain that intervenors fail to allege any specific injury they have suffered or any causation stemming from

- 33 -

the *Wine Country* plaintiffs' actions.   The court has already addressed the question whether intervenors have alleged sufficient facts to state an injury for purposes of standing.   *See supra* at § II(C).   For the same reasons, the court concludes that Glazer's, Republic, and Samco have alleged at least the threat of an economic injury sufficient for the purposes of the "case of actual controversy" inquiry.

The court also concludes that intervenors have sufficiently alleged the causation element of a "case of actual controversy" because the economic injury that intervenors will apparently suffer if out-of-state wine retailers are permitted to bypass Texas's three-tier system is caused by out-of-state retailers' selling wine directly to Texas consumers.   Without these out-of-state retailers, the Texas three-tier system would continue to operate, and the in-state wholesalers and retailers would not have the threat of economic injury.   Thus the court holds that causation has been sufficiently pleaded.

The redressability element of the "case of actual controversy" inquiry requires that the injury suffered is likely to be redressed by a favorable decision.   *Lawson*, 111 F.3d at 405.   Plaintiffs appear to interpret this element as requiring that there be relief available from the *Wine Country plaintiffs* that would redress the injury intervenors will suffer.   But the redressability element does not require that the relief come from the *Wine Country*

- 34 -

plaintiffs; it need only arise from the terms of the declaratory judgment.

Accordingly, the court holds that intervenors have alleged sufficient facts to state a "case of actual controversy," and it denies plaintiff's motion to dismiss intervenors' declaratory judgment counterclaims against them.

E

The *Wine Country* plaintiffs also move under Rule 12(f) to strike intervenors' affirmative defense based on the Tax Injunction Act, 28 U.S.C. § 1341.

Intervenors allege that plaintiffs' action is barred or limited by the Tax Injunction Act, which provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Intervenors argue that, by challenging various provisions of Texas's three-tier system, which forms the basis for Texas's alcohol tax collection, plaintiffs are essentially asking the court to enjoin the State of Texas from the orderly and efficient collection of alcohol taxes, which account for "hundreds of millions of dollars in yearly tax revenue." Intervenors Answer ¶ 76. Accordingly, intervenors aver that enjoining Texas from enforcing its three-tier system directly violates § 1341.

Plaintiffs move to strike intervenors' Tax Injunction Act

affirmative defense under Rule 12(f), contending that plaintiffs have only challenged those portions of Texas's regulatory system that are discriminatory. They maintain that intervenors cannot identify a single tax provision that the *Wine Country* plaintiffs have challenged in their suit.

Rule 12(f) provides that the court may strike from any pleading any immaterial, impertinent, or scandalous matters. The decision whether to grant defendants' motion to strike is within the discretion of the court. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (citing *FDIC v. Niblo*, 821 F.Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.)). "The court must deny a motion to strike if there is any question of fact or law." *Id.* (citing *Niblo*, 821 F. Supp. at 449) (footnote omitted)).

> [W]hen there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike. Under such circumstances, the court may properly, and we think should, defer action on the motion and leave the sufficiency of the allegations for determination on the merits.

*Augustus v. Bd. of Pub. Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (footnotes omitted).

Intervenors argue in response to plaintiffs' motion to strike that tax collection is one of the core interests that prompt states like Texas to adopt regulatory schemes such as the three-tier system. Accordingly, a challenge to the three-tier system attacks the arrangement by which Texas collects substantial excise taxes on alcohol sold to Texas consumers. Intervenors also argue that because plaintiffs have attacked numerous statutory components of the State system, there remain fact questions as to whether the only provisions challenged are those aspects of the Texas alcohol regulatory system that discriminate.

The court suggests no view concerning intervenors' likelihood of success on their affirmative defense. Because motions to strike are generally disfavored and plaintiffs have not alleged that they will be prejudiced or harmed by the court's permitting the affirmative defense to go forward, and because there remain questions of law and fact on the question whether the Tax Injunction Act applies in this case, the court denies plaintiffs' motion to strike.

\* \* \*

For the reasons set out, the court denies the *Siesta Village* defendants' July 25, 2006 motion to dismiss intervenors' cross-claim against them, except to the extent the cross-claim alleges violations of state law by state officials, in which case it is dismissed based on Eleventh Amendment immunity. The court denies

the *Wine Country* plaintiffs' August 24, 2006 motion to dismiss intervenors' counterclaims and to strike intervenors' affirmative defense.

**SO ORDERED.**

January 22, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

– 38 –